IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| VIRGIE FARMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 10-2386-JWL |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding Plaintiff has not shown error in the administrative law judge's (ALJ's) credibility determination, the court ORDERS that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.     Background**

Plaintiff applied for DIB and SSI in November 2006, alleging disability since November 1, 2003.  (R. 13, 131-41).  The applications were denied initially and upon

reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ). (R. 13, 64-67, 79-89, 92-108). Plaintiff's request was granted, and Plaintiff appeared with counsel before ALJ William G. Horne on May 5, 2009. (R. 13, 23-63). At the hearing, testimony was taken from Plaintiff and a vocational expert. Id. On June 23, 2009 the ALJ issued a decision in which he found that jobs exist in significant numbers in the national economy which Plaintiff can perform, and that she has not been disabled within the meaning of the Act at any time after her alleged onset date through the date of the decision. (R. 13-22). Consequently, he denied Plaintiff's applications. (R. 21-22).

Plaintiff requested review of the hearing decision, and provided a briefing memorandum to the Appeals Council. (R. 8-9, 239-40). The Appeals Council found no reason under their rules to review the ALJ's decision, and denied Plaintiff's request for review. (R. 1-5). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II. Legal Standard

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)). Section 405(g) of the Act provides that, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

2

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education,

and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses her residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff asserts but one claim of error before the court--that the ALJ's credibility analysis is not supported by substantial evidence. (Pl. Br. 5-11). Her claim of error is premised upon three separate arguments: (1) the ALJ confused forgetfulness with incredibility, and Plaintiff's significant problems with memory do not permit a finding that her allegations are incredible; and the ALJ erred both (2) in relying on Plaintiff's lack of treatment and (3) in relying on Plaintiff's sporadic daily activities to find her allegations incredible. Id. The Commissioner argues that Plaintiff is misapplying the law to this case, and that substantial evidence in the record as a whole supports the ALJ's credibility determination. (Comm'r Br. 6-12). The court finds that Plaintiff's arguments focus on portions of the ALJ's rationale while ignoring the bulk of his analysis, that Plaintiff attempts to apply the Frey factors erroneously, and that the record evidence as a whole supports the ALJ's credibility determination.

## III. The Credibility Determination

### A. The ALJ's Analysis

The ALJ stated his RFC assessment as finding number 5 in his decision:

claimant has the residual functional capacity to perform light work . . . except for the following nonexertional limitations that reduce the claimant's capacity for work: only simple, routine, repetitive work that is as stress free as possible, no higher than an SVP of 3; must have the option to stand for 30 minutes and sit for 30 minutes during each hour of an 8-hour workday,

5

at her option; only occasional bending; no crawling, kneeling, crouching or squatting as part of her job; and no working at unprotected heights or around dangerous machinery.

(R. 16-17). Thereafter, he explained the rationale for this finding, including his evaluation of the credibility of Plaintiff's allegations of symptoms and his evaluation of the medical opinions. (R. 17-20). In his evaluation, the ALJ included an eleven-point summary of Plaintiff's allegations, and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms <u>are not credible to the extent they are inconsistent with the above residual functional capacity assessment</u>." (R. 17-18) (emphasis added).

The ALJ noted that "This finding is supported by the medical records in evidence," (R. 18), and summarized the medical records, including the evidence supporting his finding of incredibility. (R. 18-19) (no record evidence of follow-up treatment for head injury; Plaintiff's reported surgery for a ruptured aneurysm, but there is no record of such surgery; new medications reduced the severity and frequency of headaches; Dr. Barnett opined Plaintiff was "cognitively capable of simple, repetitive work tasks;" Drs. Fantz and Schloesser concurred with Dr. Barnett's mental diagnoses). Finally, the ALJ summarized and concluded his credibility analysis in two paragraphs:

> The undersigned has incorporated virtually all of the claimant's alleged physical limitations into her residual functional capacity, with the exception of her alleged need to "rest and stretch" for 4-5 times during the day. There is no medical need documented in her treatment records for the claimant to rest and stretch during the day. Even though the claimant alleges that she is

limited in her ability [to] stand or walk for more than short periods of time, her residual functional capacity includes the option for her to sit or stand as she chooses. She is limited to light work because of her chronic left knee pain, which also accounts for her postural limitations. She cannot work at unprotected heights or around dangerous machinery due to the risk of having a migraine headache that can trigger one of her blackout episodes. She is limited to performing only simple, routine, repetitive work that is as stress free as possible, no higher than an SVP of 3, due to her loss of concentration and short term memory difficulties that are caused by her cognitive disorder and mild dysthymia. There is nothing in the record of evidence that shows the claimant is not able to perform light work with the physical and mental functional restrictions set forth in her residual functional capacity.

The claimant testified that she dropped out of school in the l0th grade, but she stated in her Disability Report that she completed the 12th grade (Exhibit 3E, p. 7). This inconsistency has an adverse effect on her overall credibility in this case. Her almost total lack of medical treatment since her alleged onset date does not support her allegation of disability. She testified that she performs a wide range of daily activities, such as vacuuming, dusting, washing dishes, cooking, and caring for pets, which is inconsistent with her claim of disability.

(R. 19-20).

### B. The Credibility Standard

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings.'" Hackett, 395 F.3d at 1173 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)).

### C. The Court's Analysis

Courts in this district have remanded for a proper explanation of an ALJ's credibility rationale when he finds a Plaintiff's allegations incredible only to the extent they are inconsistent with the assessed residual functional capacity, or similar language to that used by the ALJ in this case. Priest v. Barnhart, 302 F. Supp. 2d 1205, 1214-16 (D. Kan. 2004); Robbins v. Barnhart, 205 F. Supp. 2d 1202-04 (D. Kan. 2002); Martin v. Bowen, 625 F. Supp. 1270, 1276 (D. Kan. 1987); Belcher v. Astrue, No. 09-2299-KHV-GBC, 2010 WL 2232697, *3 (May 4, 2010); Ramirez v. Barnhart, No. 02-2261-KHV, 2003 WL 21105082, *6-7 (April 4, 2003); Winters v. Barnhart, No. 00-2419-DJW, 2002 WL 1286134, *6-9 (June 5, 2002); Gilbertson v. Barnhart, No. 01-1256-MLB, slip op. at 18, (D. Kan. July 31, 2002) adopted by dist. ct. (Aug. 28, 2002). The reason for this is that such language says nothing about which of Plaintiff's allegations are determined to be credible and which allegations are determined not to be credible. The Gilbertson court noted that a better practice would be either to accept plaintiff's allegations completely, reject plaintiff's allegations completely, or explain which allegations are accepted and which allegations are rejected and how the evidence of record supports the partial credibility finding. Gilbertson, No. 01-1256-MLB, slip op. at 18 (citing McGoffin v. Barnhart, 288 F.3d 1248, 1253 (10th Cir. 2002) (error when ALJ failed to explain and support with substantial evidence which testimony he did not believe and why)).

8

In the decision at issue here, the ALJ did precisely as suggested by the Gilbertson court. He explained that he had "incorporated virtually all of the claimant's alleged physical limitations into her residual functional capacity, with the exception of her alleged need to "rest and stretch" for 4-5 times during the day." In the first paragraph which the court quoted from the decision at issue, the ALJ explained how the evidence supported his credibility determination, and what testimony he believed or disbelieved, and why. In the last paragraph quoted, he listed three additional factors supporting his finding of incredibility: Plaintiff's inconsistent testimony regarding education, her almost total lack of medical treatment after her alleged onset of disability, and her testimony regarding a wide range of daily activities. Plaintiff's allegations of error ignore most of the ALJ's credibility analysis as quoted, and focus entirely on the last paragraph quoted.

1.  Reliance on Inconsistent Statements Regarding Education

Citing the last paragraph quoted, Plaintiff notes that the ALJ relied upon her inconsistent statements regarding the level of education she completed, and argues that this solitary inconsistent statement does not support the credibility finding. (Pl. Br. 6). She asserts that she suffers from significant problems with memory and concentration since her brain injury, and points to her testimony at the hearing and her reports to Dr. Barnett. Id. at 7. She argues that this inability to recall resulted from her brain injury and does not bear on her credibility. Id.

Although Plaintiff's argument ignores it, the ALJ found that Plaintiff has short term memory loss, and that finding is supported by substantial evidence in the record. (R.

15).  However, inconsistent statements--even if they result from memory loss--have an adverse effect on Plaintiff's overall credibility.  The ALJ did not find malingering, exaggeration, or deliberate deception.  What he found was that at one point Plaintiff stated she completed the 12th grade, whereas at the hearing she testified she dropped out in the 10th grade.  (R. 20).  Plaintiff does not argue that this finding is erroneous.  Inconsistent testimony with regard to one fact (regardless of the reason for the inconsistency) tends to support the ALJ's finding that Plaintiff's allegations regarding other facts are not credible.  Plaintiff cites no authority for the proposition that even though she has trouble remembering certain facts, the ALJ must credit the facts Plaintiff asserts she does remember.

Plaintiff argues that her memory problems "are the key to her inability to work," which the ALJ ignored.  (Reply 1).  The ALJ is not required to view the evidence from the viewpoint of the plaintiff.  Lax, 489 F.3d at 1084 (10th Cir. 2007)("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citations, quotations, and bracket omitted).  The court finds no error in the ALJ's reliance on Plaintiff's inconsistent testimony to support a finding of incredibility.

        2.      Reliance on "An Almost Total Lack of Medical Treatment"

After explaining that his RFC incorporated most of Plaintiff's alleged limitations, and explaining the reasons he did not adopt "her alleged need to 'rest and stretch' for 4-5 times during the day" (R. 19), the ALJ also found that Plaintiff's "almost total lack of medical treatment since her alleged onset date does not support her allegation of disability." (R. 20). Plaintiff accepts the ALJ's finding regarding the frequency of her medical treatment. (Pl. Br. 8) ("Farmer occasionally went to the doctor," "But the record shows little treatment since Farmer's 2003 car accident."). However, she argues that an inability to afford medical treatment may justify a failure to pursue or seek treatment, and that the ALJ erred in failing to apply the four-factor test from Thompson, 987 F.2d at 1489-90, and Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987) before relying on a "failure to seek treatment to reach an adverse credibility finding." (Pl. Br. 8-9). The Commissioner argues that the Frey test is not applicable to the circumstances of this case, and, "Applying Frey to a case in which the claimant needed no treatment allows the claimant to use Frey as a shield against the ALJ's consideration of all of the evidence and against the proper consideration of his or her credibility."

The court finds that in the circumstances of this case, the ALJ's failure to apply the Frey test does not require remand. After Plaintiff's counsel initially questioned her, the ALJ began questioning Plaintiff, and explained that the law permits a finding of disability only if the claimant has a medically determinable impairment, and that there must be medical records to back up the claimant's allegations. (R. 44). He noted that the record contained 14 medical exhibits and stated:

11

>But of those 14 only three are from your doctors. The rest of them are Social Security doctors. In fact, you have one medical record from KU from 11/1 of '03. One medical record from Dr. Bales [phonetic] dated 3/65 [sic] of '06. And one medical record from Lawrence Memorial Hospital dated 11/1 of '03. So if we look at that in the context date of your onset date which is '03, 11/1 of '03, you have two medical records from '03, none for '04, none for '05, one from '06, none from '07, none from '08, and none from '09. You got three medical records. But I'm going to work with that because I just want to let you know that it's difficult to make a Decision on a medical impairment or a mental impairment that prevents you from working when you have no medical records to refer back to to back up what you say.

(R. 44-45).

At his second opportunity to examine Plaintiff, her counsel stated:

> . . . I just thought of something. Do you have medical insurance to cover any doctor treatments?
> A    I have a medical card.
> Q    And how long have you had that medical card?
> A    I don't recall. I really don't remember how long I've had it.

(R. 54).

Thereafter, the ALJ followed up on the issue:

> . . . if you had a medical card, why do you have such few medical records? You don't like doctors? I know you don't like judges, but I mean --
> A    No, I like judges.
> Q    Okay.
> A    I like judges better than I do doctors. Believe that one.
> Q    So you didn't--so that's the reason that you don't have any medical records? You just don't like to go to the doctor?
> A    No, I don't like doctors.

(R. 54). Later, Plaintiff stated why she did not like doctors:

> No. This is why. Last time I went and seen my doctor I sat in the waiting room for an hour and 45 minutes. Then I go in the little box and sit for two hours an[d] 45 minutes.

(R. 54).

Plaintiff's arguments (that she looked into obtaining care from a free walk-in clinic in 2007; and that although Plaintiff testified she had a medical card, she did not state whether she could afford the co-pay, if any) carry little weight in these circumstances. (Pl. Br. 8) (citing (R. 213) (Health Care Access)). First, Plaintiff was clear regarding the reason she did not seek medical treatment more frequently--she doesn't like to go to doctors. She did not hint at any other reasons and did not suggest that financial concerns entered into the decision. Moreover, Plaintiff sought and received treatment for her migraine headaches, and testified that she had been taking a new medication for her migraine headaches for two months, and said nothing of financial concerns in securing the treatment or the medication. (R. 40-41, 49). Beyond the mere fact that she is applying for disability, there is nothing in this record to suggest that Plaintiff cannot afford to visit doctors more frequently than has been the case. Second, as the Commissioner pointed out in his brief, in November 2008 when the Commissioner requested medical records from the free clinic, Health Care Access, they responded that Plaintiff had not been there since 1999. (Comm'r Br. 10-11) (citing (R. 306)).

As Plaintiff argues, the Frey test is applicable both where an ALJ is denying benefits, and where an ALJ is evaluating the credibility of the claimant's allegations. Goodwin v. Barnhart, 195 F. Supp. 2d 1293, 1295 (D. Kan. 2002) (citing Thompson, 987

F.2d at 1490; Ragland v. Shalala, 992 F.2d 1056, 1059-60 (10th Cir. 1993)). But, the Tenth Circuit has held that the Frey test is not required in situations such as is presented here, where treatment has not been prescribed or recommended, but the ALJ is simply considering "what attempts plaintiff made to relieve [her symptoms] . . . in an effort to evaluate the veracity of plaintiff's contention that [her symptoms were] so severe as to be disabling." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000) (citing Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991); Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987)); see also Allen v. Apfel, No. 99-3249, 2000 WL 796081 (10th Cir. June 21, 2000); Billups v. Barnhart, 322 F. Supp. 2d 1220, 1226 (D. Kan. 2004).

  Here, the ALJ was not suggesting that Plaintiff failed to follow prescribed or recommended treatment, in fact, he noted that Plaintiff had recently begun treatment for migraine headaches and had been prescribed medication which she testified she was taking, and it had decreased the frequency and severity of her headaches. (R. 19). Rather, the ALJ was concerned that Plaintiff's symptoms were not as severe as she claimed as is indicated by the fact that in attempting to relieve her symptoms she sought and received very little medical treatment after her alleged onset date. This is a factor on which the ALJ may rely in evaluating the credibility of Plaintiff's allegations. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995); Wiley v. Chater, 967 F. Supp. 446, 451 (D. Kan. 1997).

  As the court's discussion above demonstrates, the record does not support Plaintiff's argument that she cannot afford treatment. Plaintiff did not testify to that

effect. Rather, she testified that she has a medical card, but that she does not see doctors because she does not like to see doctors. Moreover, the record demonstrates that she was aware of the availability of a free health clinic, but had not visited that clinic since 1999, and she had sought and received treatment for migraine headaches. The ALJ did not err in failing to employ the Frey test in this case.

### 3. Reliance on Plaintiff's "Wide Range of Daily Activities"

Plaintiff notes that an individual need not be totally incapacitated to be disabled, and that the sporadic performance of work or household tasks will not establish that the individual is able to work. (Pl. Br. 10) (citing Thompson, 987 F.2d at 1489; and Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992)). She does not argue that she cannot perform a "wide range of daily activities" as the ALJ found, but that her "disability is primarily related to her poor cognitive functioning--not her physical ailments." Id. She argues that her "daily activities are consistent with Dr. Barnett's report," that the ALJ's reliance upon daily activities is contrary to the law, and that her ability to perform the daily activities at issue does not provide substantial evidence supporting the credibility finding. Id. at 11. The Commissioner argues that when an individual's activities are inconsistent with her claims of disabling limitations, that fact is properly considered in a credibility determination, that Plaintiff's daily activities were substantial, and that the ALJ properly considered them in finding her allegations not credible. (Comm'r Br. 10).

As Plaintiff asserts, the Tenth Circuit has long held that the sporadic performance of minimal activities does not establish that a claimant is able to work. E.g., Broadbent v.

15

Harris, 698 F.2d 407, 413 (10th Cir. 1983) (working in the yard, performing a few household tasks, working on cars, taking occasional trips with brother in camper); Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984) (jogging and intermittent work as a janitor); Frey v. Bowen, 816 F.2d 508, 516-17 (10th Cir. 1987) (daily activities); Thompson, 987 F.2d at 1490 (minimal daily activities). Therefore, when an ALJ wants to rely upon daily activities to discount the credibility of a claimant's allegations it will be necessary for him to explain which activities are inconsistent with which allegations. And, if he is looking at all daily activities in general, he must explain why those activities preclude work activity in the particular circumstances of the case at issue. Because the ALJ here did not explain how the activities are inconsistent with Plaintiff's claim of disability, he erred.

In the circumstances of this case, however, the court does not find that the error requires remand because "the balance of the ALJ's credibility analysis is supported by substantial evidence in the record." Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004). The ALJ's credibility determination provided a well-reasoned rationale to find Plaintiff's allegations not credible, and that rationale is supported by substantial evidence in the record as a whole.

Plaintiff's argument that her daily activities are consistent with Dr. Barnett's report does not require a different result. The ALJ specifically considered and discussed Dr. Barnett's report and accepted Dr. Barnett's conclusion that Plaintiff was cognitively capable of simple, repetitive work tasks:

> Upon mental status examination, Dr. Barnett listed the following mental diagnoses: dysthymic disorder, late onset, mild; and cognitive disorder, not otherwise specified, secondary to traumatic brain injury. Regarding the claimant's ability to work, Dr. Barnett noted his opinion that she appeared to be organically impaired in a manner that would probably interfere with some types of employment due to her problems with concentration. However, Dr. Barnett did not opine that the claimant's mental impairments would preclude her from all work. Dr. Barnett stated that the claimant appeared cognitively capable of simple, repetitive work tasks, and noted that she has a positive history of work relationships. The State agency psychological consultants, Dr. Fantz and Dr. Schloesser, noted their concurrence with Dr. Barnett's mental diagnoses.

(R. 19) (citing Exs. 5F, 7F, 10F (R. 278-81, 286-99, 305)).

In this case, the ALJ provided a very detailed credibility evaluation which was closely and affirmatively linked to substantial evidence. He stated the rationale for his credibility determination, and explained which of Plaintiff's allegations are determined to be credible, which allegations are determined not to be credible, and pointed to the evidence he relied upon in reaching those determinations. At the end of his analysis, the ALJ stated three additional factors which he found supported his credibility determination: Plaintiff's inconsistent testimony regarding education, her almost total lack of medical treatment after her alleged onset of disability, and her testimony regarding a wide range of daily activities. Plaintiff's allegations of error ignore most of the ALJ's credibility analysis, and focus entirely on the three additional factors. The court has reviewed Plaintiff's allegations of error, and finds error only with regard to the third additional factor. As discussed herein, the court finds "the balance of the ALJ's

credibility analysis is supported by substantial evidence in the record," Branum, 385 F.3d at 1274, and sees no need to remand this case.

**IT IS THEREFORE ORDERED** that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 14th day of April 2011, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**